UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,

   -against-


JOSE VALESQUEZ,

                Defendant.
-----------------------------------X
JOSE VALESQUEZ,

                Petitioner,

   -against-


UNITED STATES PAROLE COMMISSION,

                Respondent.
-----------------------------------X

**MEMORANDUM AND ORDER**

85-CR-691 (KAM)

20-CV-583 (KAM)

**MATSUMOTO, United States District Judge:**

      On January 27, 2020, defendant's counsel, Ms. Eisner-
Grynberg, submitted a letter and a proposed order to the court,
seeking (1) to be appointed as counsel to Jose Valesquez ("Mr.
Valesquez" or "defendant"), who had been detained, since
December 3, 2019, at MCC-New York due to alleged federal parole
violations arising out of his 1985 federal parole supervision in
case docket, 85-cr-691; (2) to be notified by the United States
Parole Commission and the United States Department of Probation
of "the location, date and time of Mr. Valesquez's preliminary

interview, and any future interview or hearing"; and (3) an order that no Parole or Probation Interview of Mr. Valesquez occur outside Ms. Eisner-Grynberg's presence. (ECF No. 1, Motion to Appoint Counsel ("Reconsideration Mot.").)

On January 28, 2020, the court's deputy asked Ms. Eisner-Grynberg to ascertain whether the Probation Department objected to the proposed order. The court's deputy was advised that the Probation Department did not object to the proposed order, and Michelle Powell, Senior U.S. Probation Officer, sent a one-page memorandum, dated January 28, 2020, to the court, stating that Probation "ha[s] no objection to Mia Eisner-Grynberg's appointment as counsel since Valesquez has already indicated his intention to have legal representation for the preliminary interview and parole violation hearing as verified by receipt of a signed CJA 22 form." (ECF No. 8, Probation Mem. Dated 1/28/20.) Consequently, on January 29, 2020, the court so-ordered defendant's counsel's proposed order. On January 30, 2020, the court received a call from Assistant U.S. Attorney Jonathan Siegel, notifying the court that the government intended to file a letter motion for reconsideration, in part, of the court's January 29, 2020 order.

Because an electronic docket did not then exist in this 35-year-old criminal case, on January 30, 2020, the court directed, via telephone, that AUSA Siegel send the

2

aforementioned motion to the court and defendant's counsel via e-mail, which AUSA Siegel effectuated.* (ECF No. 3, Reconsideration Mot.) After receiving the government's motion, defendant's counsel requested an in-court hearing, with defendant present, to which the government did not object. The court then directed defendant's counsel to respond to the government's letter motion by Friday, January 31, 2020 at noon, and to circulate its response on the same e-mail thread. The court also scheduled the requested court hearing, and also requested that the government arrange for defendant, who was detained at MCC in Manhattan, to attend the hearing.

On January 31, 2020, defendant's counsel submitted, via e-mail, its opposition to the government's letter motion, and supporting exhibits. [ECF No. 4, Opposition ("Opp.").] Later that day, the electronic docket was established, and the court ordered the parties to file their respective motion papers on ECF, in chronological order, and noted that any further requests should be filed on the docket. The government also filed a reply to defendant's counsel's opposition to the government's motion for reconsideration. [ECF No. 5, Reply.]

On January 31, 2020, defendant's counsel also filed an Emergency Motion for Writ of Habeas Corpus, Or, in the

---

* Due to the age of the criminal action, 85-cr-691, the case was not accessible on ECF.

Alternative, A Writ of Mandamus.  (ECF No. 6, Emergency Mot.)
The court ordered that the government respond to defendant's
Emergency Motion by 4:00 p.m. the next day, February 1, 2020,
addressing: "(1) under what authority does the government
currently detain defendant; (2) using what procedures may
defendant challenge his current detention; (3) how long can the
government hold defendant without a preliminary interview; (4)
the reasons for defendant's detention since December 3, 2019
without the holding of a preliminary interview; and (5) the
government's position with respect to defendant's requested
relief, *i.e.* defendant's release on bond as early as February 3,
2020, or scheduling a preliminary interview before the Parole
Commission or the Probation Department, by designation, next
week."  (Dkt. Order dated 1/31/20.)  The government timely filed
its response in opposition to defendant's Emergency Motion.
(ECF No. 7, Emergency Mot. Opp.)

On February 3, 2020, the court held a hearing on the
government's motion for reconsideration, as well as defendant's
emergency motion for *habeas* or *mandamus* relief.  (Minute Entry,
dated 2/3/20.)  AUSA Siegel, representatives from the Probation
Department, Ms. Eisner-Grynberg, and defendant appeared for the
hearing.  As of February 3, 2020, the Parole Commission had not
scheduled a preliminary interview, despite evidence in the
record that the United States Marshal had returned the executed

4

arrest warrant to the Parole Commission on December 3, 2019.
(ECF No. 6, Ex. A, United States Marshal's Return to United
States Parole Commission.)  Following oral argument, for the
reasons stated on the record, and as discussed below, the court
**denied** the government's motion for reconsideration, **denied**
defendant's motion seeking *habeas* relief, and **granted**
defendant's request for *mandamus* relief, by ordering that the
Parole Commission transmit the Parole Interview Request form,
and any other necessary forms, forthwith, to the Probation
Department, in order for the Probation Department to conduct the
preliminary interview later that day, February 3, 2020.  (Dkt.
Order, dated 2/3/20.)  The parties were further ordered to
appear for a status conference the following day, February 4,
2020.  (*Id.*)

 In the early evening of February 3, 2020, defendant's
counsel filed a Motion for Bond, pending the final parole
revocation hearing, seeking defendant's release on bond, "given
the 62-day delay in holding [the preliminary interview] and the
local recommendation of time served."  (ECF No. 10, Motion for
Bond 1.)  Defense's motion cited *Argro v. United States*, 505
F.2d 1374, 1378 (2d Cir. 1974) and *Galante v. Warden,
Metropolitan Correctional Center*, 573 F.2d 707 (2d Cir. 1977).
On February 4, 2020, the government filed its opposition to
defendant's Motion for Bond, in which it asserted that "the

Court lacks jurisdiction to grant the defendant bail" and urged that defendant's motion be denied without prejudice. (ECF No. 11, Bond Motion Opp. 1.) The government argued that the Second Circuit's decision in *Argro v. United States* did not hold that a district court has the authority to grant bail in a non-*habeas* case and that *Argro* was purportedly a *habeas* case. (*Id.*)

On February 4, 2020, the parties attended a scheduled status conference regarding defendant's Motion for Bond, at which the court read its decision into the record, and **granted** defendant's Motion for Bond. The parties agreed upon the bond conditions to release defendant, on his own recognizance, who is to report to his assigned probation officer and comply with all previously-imposed conditions of parole. The court notified defendant of the conditions of his bond. Following further discussion between the parties, the court, the US Marshal Service and the Warden of the MCC, defendant was released on bond on February 4, 2020. (ECF No. 13, Order Setting Conditions of Release.)

## DISCUSSION

### A.  Government's Motion for Reconsideration

#### i.  Background

*First*, the government had moved to reconsider the second and third items of the court's January 29, 2020 order that required the Probation Department and the Parole Commission

to notify defendant's counsel of the "location, date and time of Mr. Valesquez's preliminary interview, and any future interview or hearing," and forbidding any Parole or Probation interview of Mr. Valesquez outside of his counsel's presence. (Reconsideration Mot. 1.)  The government took "no position on the appointment of counsel" and did not object to the part of the court's January 29, 2020 order that had appointed Mia Eisner-Grynberg as Mr. Valesquez's counsel.  (*Id.*)  The government, however, urged that the second and third items of the court's order were "contrary to relevant Supreme Court and Second Circuit precedent," citing *Moran v. Burbine*, 475 U.S. 412, 433 n.4, *United States v. Medunjanin*, 752 F.3d 576, 587 (2d Cir. 2014), and *United States v. Moore*, 670 F.3d 222, 234 (2d Cir. 2012).

Specifically, the government contended that, because "defendant has not been formally charged with a parole violation and because he has not yet appeared before a judicial officer on any charges, [his] Sixth Amendment rights have not attached." (Reconsideration Mot. 4.)  Further, the government asserted that defendant must invoke his right to counsel "during the course of a custodial interview," that "Probation may interview the defendant outside the presence of his counsel as part of its ongoing investigation into a possible parole violation," and that "his counsel has no right to be advised of where or when

7

such interviews will occur." (Reconsideration Mot. 4-5.) Thus, the government requested that the court modify its January 29, 2020 order "to allow Probation to proceed with the preliminary interview without informing defense counsel of its date, time or location and without the presence of counsel, unless and until the defendant himself requests counsel's presence during the course of a custodial interview." (Reconsideration Mot. 5.) Notably, the government failed to explain how Mr. Valesquez might meaningfully exercise his undisputed right to counsel, during his preliminary interview with the Parole Commission, without his counsel being notified of the time, date, and place of such an interview.

   In defense counsel's opposition to the government's motion for reconsideration ("Reconsideration Mot. Opp."), defense counsel noted, at the outset, that her client "has been detained by the United States, and afforded no process whatsoever, for fifty-nine days," as of January 31, 2020. (Reconsideration Mot. Opp. 3.) Defense counsel asserted that defendant "plainly has a right to be represented by counsel at his parole revocation preliminary interview," 28 C.F.R. § 2.48, and he has "unambiguously invoked his right to counsel at that preliminary interview, via his January 27, 2020 signature on Form CJA-22"; "counsel's representations to the United States Parole Commission, United States Probation Department, and this

Court"; and in a signed and sworn Affidavit dated January 31, 2020. (Reconsideration Mot. Opp. 3; ECF No. 9, Ex. C, Valesquez Affidavit; ECF No. 9, Ex. E, Eisner-Grynberg Affidavit.)

Defendant's counsel's opposition noted that the "government cites no authority for the proposition that a defendant who is represented by counsel, and who has already invoked his right to counsel at his parole revocation preliminary interview, must do so a second time, uncounseled, at his preliminary interview," and asserted that the government's cited cases are "inapposite to parole revocation procedures." (Reconsideration Mot. Opp. 3-4.)

In its reply, the government asserted that the Sixth Amendment right to counsel had not attached to Mr. Valesquez's parole revocation proceeding, that Mr. Valesquez may not invoke his right to counsel in anticipation of his preliminary interview, and requested that the court "permit Probation to proceed according to Parole's established rules." (ECF No. 5, Reply 2-4.)

## ii. Applicable Law and Analysis

The parole statutes and implementing regulations, as well as United States Supreme Court case law, have established that a parolee is entitled to be represented by an attorney in connection with his parole revocation proceedings, and if he is financially unable to retain counsel, "counsel shall be provided

pursuant to section 3006A." 18 U.S.C. § 4214(2)(B) (repealed Oct. 12, 1984).

Title 28 C.F.R. § 2.48(a) provides:

A parolee who is retaken on a warrant issued by a Commissioner shall be given a preliminary interview by an official designated by the Regional Commissioner to enable the Commission to determine if there is probable cause to believe that the parolee has violated his parole as charged, and if so, whether a revocation hearing should be conducted. The official designated to conduct the preliminary interview may be a U.S. Probation Officer in the district where the prisoner is confined, provided he is not the officer who recommended that the warrant be issued.

Subsection (b) of 28 C.F.R. § 2.48 provides:

**At the beginning of the preliminary interview, the interviewing officer** shall ascertain that the Warrant Application has been given to the parolee as required by § 2.46(b), and **shall advise the parolee that he may have the preliminary interview postponed in order to obtain representation by an attorney or arrange for the attendance of witnesses. The parolee shall also be advised that if he cannot afford to retain an attorney he may apply to a U.S. District Court for appointment of counsel to represent him at the preliminary interview and the revocation hearing pursuant to 18 U.S.C. 3006A.** In addition, the parolee may request the Commission to obtain the presence of persons who have given information upon which revocation may be based. Such adverse witnesses shall be requested to attend the preliminary interview unless the parolee admits a violation or has been convicted of a new offense while on supervision or unless the interviewing officer finds good cause for their non-attendance. Pursuant to § 2.51 a

10

subpoena may issue for the appearance of adverse witnesses or the production of documents.

28 C.F.R. § 2.48 (emphasis added).

Further, as 18 U.S.C. § 3006A provides:

Each United States district court, with the approval of the judicial council of the circuit, shall place in operation throughout the district a plan for furnishing representation for any person financially unable to obtain adequate representation in accordance with this section. Representation under each plan shall include counsel and investigative, expert, and other services necessary for adequate representation.

As 18 U.S.C. § 3006A further provides, the right to legal representation extends to "any financially eligible person" who "is under arrest, when such representation is required by law" or who "faces loss of liberty in a case, and Federal law requires the appointment of counsel." 18 U.S.C. § 3006A(a)(1)(D) and (I).

Thus, on February 3, 2020, the court found that defendant has a clear statutory right to counsel and that, under 18 U.S.C. § 4214(a)(1), defendant is entitled to a timely preliminary interview and to have counsel represent him at the preliminary interview, as well as at a revocation hearing pursuant to 18 U.S.C. 3006A. *See also* 28 C.F.R. § 2.48. The court further found that, unless defendant's counsel was informed, in advance, of the location, date and time of defendant's preliminary interview or revocation hearing,

defendant would not be able to meaningfully avail himself of his right to counsel at that interview or hearing.

Furthermore, it was undisputed that Mr. Valesquez had, unequivocally, invoked his right to be represented by counsel, in connection with his preliminary interview in front of the Parole Commission, on multiple occasions. *First*, Mr. Valesquez had been advised of his right to counsel, as indicated on his Warrant Application, dated 1/2/2019. (ECF No. 3-2, Warrant Application.) On January 27, 2020, Mr. Valesquez signed a Statement of Parolee or Mandatory Releasee Concerning Appointment of Counsel under the Criminal Justice Act, indicating that he wished to apply to the district court for appointment of counsel. (ECF No. 3-2, Appointment of Counsel Form.) The CJA form provides, in relevant part: "I may apply to the United States District Court for appointment of counsel to assist or represent me in this matter before the United States Parole Commission, and . . . such representation by counsel will be furnished to me if the judicial officer determines I am financially unable to obtain attorney representation." (*Id.*) *Second*, his signed and sworn Affidavit states: "I hereby invoke my right to counsel, specifically, my already appointed counsel, Ms. Eisner-Grynberg, at my preliminary interview. I will not answer questions outside the presence of my attorney." (ECF No. 9, Ex. C, Valesquez Affidavit ¶ 8.) *Third*, Mr. Valesquez's

counsel had notified the Parole Commission, the Probation Department, and the court of her representation and invoked his right to be represented at his preliminary interview and revocation proceedings.  (ECF No. 4, Reconsideration Mot. Opp. 3.)

In addition, the court determined that the cases that the government had cited in support of its motion to reconsider were inapposite to parole revocation procedures.  According to the government, defendant's right to counsel would not attach until "the earlier of (1) the filing of formal charges, or (2) at the first appearance of the accused before a judicial officer[.]"  (Reconsideration Mot. 4.)  But, as defendant's counsel had conceded, neither of these events would occur in the course of defendant's parole revocation matter: formal charges are never filed.  Instead, the parolee receives notice of the charges, a preliminary interview and a final revocation hearing conducted by the United States Parole Commission, or, by designation, a United States Probation Officer.  28 C.F.R. §§ 2.23, 2.48, 2.50.  And, due to the foregoing procedures, a paroled defendant will not ordinarily appear before a judicial officer in the course of his parole revocation matter. (Reconsideration Mot. Opp. 3-4.)

Defendant's right to counsel exists by law and was formalized when this court granted defendant's CJA application by

order dated January 29, 2020.  (ECF No. 3-1, Ex. 1, January 29, 2020 Order.)  As explained above, defendant's right to counsel at his preliminary interview is a clear and undisputed statutory right – a right that defendant has unambiguously and repeatedly invoked. *See* 18 U.S.C. § 4214(a)(1); *See also Anderson v. New York State Div. Of Parole*, 546 F. Supp. 816 (S.D.N.Y. 1982) (concluding, as a matter of law, that defendant was deprived of his right to counsel, under the federal and state constitutions, at his parole revocation hearings, and that a "parolee confronted with revocation of his parole was entitled under the due process clause of the Fourteenth Amendment to certain minimal protections") (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)).

Additionally, in *Gagnon v. Scarpelli*, the United States Supreme Court explained its reasoning for extending the right to counsel to probationers and parolees:

> [T]he effectiveness of the rights guaranteed by *Morrissey* may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess. Despite the informal nature of the proceedings and the absence of technical rules of procedure or evidence, the unskilled or uneducated probationer or parolee may well have difficulty in presenting his version of a disputed set of facts where the presentation requires the examining or cross-examining of witnesses or the offering or dissecting of complex documentary evidence.
>
> *Gagnon v. Scarpelli*, 411 U.S. at 786.

Therefore, the Supreme Court in *Gagnon* concluded that there are "certain cases in which fundamental fairness-the touchstone of due process-will require that the State provide at its expense counsel for indigent probationers or parolees," and the determination as to whether counsel was or was not required must be made "on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." *Id.* at 790.

As the government conceded at the February 3, 2020 hearing, the government had cited no authority for its position that a defendant, who is represented by counsel and who has already invoked his right to counsel at his parole revocation preliminary interview, must suffer ongoing delay by again invoking his right to counsel, *at the outset of his yet-to-be-scheduled preliminary interview*, in order for his right to counsel to attach. To adopt the government's view in this case, where Mr. Valesquez had already been deprived of a timely preliminary interview for 62 days, and was languishing behind bars without a hearing indefinitely, would work a manifest injustice.

For the foregoing reasons, the court respectfully **denied**, on February 3, 2020, the government's Reconsideration Motion.

**B.     Defendant's Emergency *Habeas* and *Mandamus* Petition**

i.    <u>Background</u>

In defendant's Emergency Motion for Writ of Habeas Corpus, Or, in the Alternative, A Writ of Mandamus, defendant's counsel noted that Mr. Valesquez was being held in custody on the authority of the Parole Commission, since December 3, 2019 – 59 days as of January 31, 2020.  (ECF No. 6, Emergency Mot. 1.) During that time, despite the United States Marshal's return served on the Parole Commission on December 3, 2019, defendant had received no due process, in the form of a preliminary interview or otherwise, to which he is entitled according to United States Supreme Court precedent.  (*Id.* at 2; *Morrissey v. Brewer*, 408 U.S. 471 (1972)).  On January 24, 2020, contrary to the December 3, 2019 Marshal's return, a case analyst of the Parole Commission allegedly advised government counsel that the Parole Commission did not receive notification of defendant's December 3, 2019 arrest until January 23, 2020; nevertheless, as of the morning of February 3, 2020, the Parole Commission did not conduct a preliminary interview at any time after January 23, 2020.  (ECF No. 6, Emergency Mot. 3; ECF No. 12, Gov. Letter re: information from Parole 1-5.)

Defendant, therefore, requested *habeas* relief pursuant to 28 U.S.C. § 2241, or, in the alternative, *mandamus* relief pursuant to 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to

compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.").

   ii.  Applicable Law and Analysis

        As defendant's counsel acknowledged in the Emergency Motion, *habeas* is an "extraordinary remedy for an untimely preliminary interview." (Emergency Mot. 8.)  Yet, defendant's counsel had not identified any bad faith, on the part of the Parole Commission, or prejudice to defendant's ability to mount a defense to the alleged parole violations, nor cited any Second Circuit or other case law, in which a court has granted *habeas* relief under similar circumstances.  The government had cited, and the court had independently located, numerous cases in which courts have found no prejudicial delay after similar or worse delays between an arrest and a preliminary interview.  *See, e.g.*, *In re Boulet v. Kenton*, 271 F. Supp. 977 (D. Conn. 1967) (even though a delay of 110 days between the petitioner's arrest as a parole violator and his first interview was "unreasonable . . . the passage of time did not prejudice the petitioner"); *Young v. Apker*, No. 05-CV-7653 (JGK), 2007 WL 2049739, at *5 (S.D.N.Y. July 18, 2007) (no prejudice where preliminary interview was conducted "less than two months after the execution of the warrant").

        Both defendant's counsel and the government cite the Second Circuit's decision in *Heath v. United States Parole*

*Comm'n*, 788 F.2d 85 (2d Cir. 1986), which analyzed the legislative history of the Parole Commission and Reorganization Act of 1976. There, the Second Circuit found that *mandamus* relief, not *habeas* relief, is generally the proper mechanism to redress untimely dispositional review procedures after a parolee has been retaken into custody. *Id. a*t 88. Where the Parole Commission has failed to act in accordance with the relevant statutes, the Second Circuit held that *mandamu*s relief can issue, to compel the Parole Commission to comply with the relevant statutes.

Although *Heath* leaves open the possibility of *habeas* relief where there has been a showing of prejudice to defendant or bad faith on the Parole Commission's part, the court found that defendant's counsel had not made the requisite showing justifying this extraordinary relief. And, even if defendant had made the requisite showing justifying extraordinary *habeas* relief, the parties disputed whether this court has jurisdiction to grant a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 because defendant was being detained at the MCC-New York in Manhattan, which is in the Southern District of New York. (ECF No. 7, Emergency Mot. Opp. 2-3.) *See also Rumsfeld v. Padilla*, 542 U.S. 426, 428 (2004) (the "general rule" for "habeas petitions challenging present physical confinement[ is that] jurisdiction lies in only one district: the district of

confinement"). The court did not rule on the jurisdictional question, as the court found that there had been an inadequate showing of bad faith or prejudice.

For the foregoing reasons, the court respectfully **denied**, on February 3, 2020, defendant's request for a writ of *habeas corpus* and the order of his immediate release.

The court found that *mandamus* relief was appropriate here and, thus, **granted** defendant's request for a writ of *mandamus*, on February 3, 2020. As of February 3, 2020, defendant had been detained, since December 3, 2019, at MCC-Manhattan, without a preliminary interview or other process, and a preliminary interview had not been scheduled, despite multiple efforts from AUSA Siegel, defense counsel Eisner-Grynberg, and the Probation Department, to obtain a response from the Parole Commission regarding the much-delayed preliminary interview, throughout late January 2020. (ECF No. 6, Emergency Mot. ¶ 20; ECF No. 6, Ex. B; ECF No. 7, Emergency Mot. Opp. 4.) The court found that the applicable parole statutes and implementing regulations do not set a definite time period in which to conduct a preliminary interview, and that the case law and regulations cited by defendant's counsel were applicable to parole violations in the District of Columbia, and thus were inapposite. Nonetheless, the court found that *mandamus* relief was justified. (ECF No. 7, Emergency Mot. Opp. 3-4.)

Specifically, as the government had acknowledged in its opposition memorandum, the parole statute provides that a preliminary hearing shall take place "without unnecessary delay."  18 U.S.C. § 4214(a)(1)(A).  The government offered no explanation or facts establishing that the 62-day delay by the Parole Commission was necessary.

Moreover, the Second Circuit in *D'Amato v. United States Parole Commission* stated:

> In *Morrissey v. Brewer* . . . the Supreme Court recognized that a parolee's conditional freedom on parole is a liberty interest that cannot be terminated without due process safeguards. **The initial stage at which due process protections are required occurs when the parolee is arrested and detained for violation of parole. . . . At that time, a preliminary hearing is required to determine whether there is probable cause to believe that the arrested parolee has violated his parole.**
>
> *D'Amato v. U.S. Parole Comm'n*, 837 F.2d 72, 75 (2d Cir. 1988) (citations omitted) (emphasis added).

Furthermore, the Second Circuit noted that "the statutory right to a preliminary hearing, like the due process right, is triggered by the execution of a parole violation warrant."  *Id.* at 76.  The Second Circuit's decision, which has not been modified or overruled by subsequent decisions, prompted the court to conclude that the 62-day delay in defendant's

preliminary interview was unreasonable and unnecessary and likely a violation of defendant's due process rights.

The court found that a 62-day delay was inconsistent with the statute's requirement that the preliminary interview occur without "unnecessary delay," as well as the Second Circuit's reasoning in *D'Amato*, stating that a preliminary hearing was required at the time of a parolee's arrest and detention. Moreover, the government had not shown why a 62-day delay was necessary. As of the February 3, 2020 hearing, neither the government, nor the Parole Commission, nor the Probation Department had provided an adequate explanation for the delay. Thus, the court found that Mr. Valesquez had met the standard for *mandamus* relief by showing a "(1) clear right to the relief sought; (2) a plainly defined and peremptory duty on the part of defendants to do the act in question; and (3) that there is no other adequate remedy available." *Paulsen ex rel. N.L.R.B. v. All Am. Sch. Bus Corp.*, 986 F. Supp. 2d 142, 147 (E.D.N.Y. 2013). The court further noted that then federal district Judge Leval, in *Rivera-Ocasio v. Hershberger*, had ordered the Parole Commission to conduct a preliminary interview the day after a hearing on the parolee's motion for a writ of *habeas corpus*, even though the delay in that case was for a substantially shorter duration than the delay at issue here. *Rivera-Ocasio v. Hershberger*, No. 91-CV-2153 (DNE), 1991 WL

60415, at *1 (S.D.N.Y. Apr. 10, 1991) (procedural history noting preliminary interview was ordered by district judge following a less-than-one-month delay).

Accordingly, as noted above, the court **granted** defendant the requested *mandamus* relief on February 3, 2020, by ordering that the Parole Commission transmit the Parole Interview Request form, and any other necessary forms, forthwith, to the Probation Department, in order to allow the preliminary interview to occur later that day. (Dkt. Order, dated 2/3/20.) If, for any reason, the Parole Commission did not comply with the court's writ of *mandamus*, the court ordered that an officer of the Parole Commission must appear for the February 4, 2020 status conference. (*Id.*)

## C. Defendant's Motion for Bond

As set forth above, on February 4, 2020, the parties, including representatives from the Probation Department, attended a scheduled status conference regarding defendant's Motion for Bond. No representative from the Parole Commission was present, but AUSA Siegel stated that he would argue on the Parole Commission's behalf. AUSA Siegel stated that, if the court were to find that it had the authority to grant bail, the government would not dispute that bail was appropriate in this case. The Probation Department indicated that it had no objection to defendant's Motion for Bond.

In *Argro*, the district court granted defendant's motion to stay his removal from the district for a parole hearing, and ordered the Parole Commission to conduct a local hearing to determine whether defendant's parole should be revoked, following defendant's state conviction for drug possession. The district court also granted defendant bail pending his revocation hearing. *Argro*, 505 F.2d at 1375. After his preliminary interview, defendant had been ordered removed to Lewisburg institution for his revocation hearing, whereupon he applied for and was granted a stay of his removal by the district court. In essence, *Argro* involved a stay of removal, challenging the propriety of a revocation proceeding.

This court found that the government's arguments opposing defendant's motion for release on bond were founded upon a misreading of *Argro*. Though the government in *Argro* conceded that the parolee's application for a stay of his removal to Lewisburg for his revocation hearing could be considered as a *habeas* petition, the Second Circuit's decision recognizing the district court's authority to grant bail was neither predicated, nor contingent upon, treating the proceeding as a *habeas* action. Rather, defendant commenced the proceeding by moving to stay the parolee's removal to a regional facility, which the Second Circuit described as a proceeding "**akin** to

habeas corpus." *Id.* at 1378 (emphasis added). Notably, the Second Circuit did not limit the district court's authority to admit a parolee to bail to *habeas* cases:

> While there is no constitutional right to bail in these circumstances, we think there may be adequate ground to support its grant in unusual cases, at least in a bona fide inquiry into whether a parole revocation is being conducted pursuant to due process . . . . Here the application to the District Court was on the propriety of the revocation proceeding itself. That is properly treated as **akin to habeas corpus**, which is also a civil action and **where bail may be granted.**

> *Argro*, 505 F.2d at 1377-78 (citations omitted) (emphasis added).

The preceding quotation from *Argro* is the only instance, in the entire opinion, except in a single footnote, where the Second Circuit mentions the word "*habeas*," and its evident purpose was to distinguish the proceeding, *i.e.* a motion for stay of removal, from a *habeas* case: "habeas corpus, which is **also** a civil action and where bail may be granted." *Id.* at 1378 (emphasis added).

Nowhere does the Second Circuit indicate in *Argro* that *habeas* is a requirement to admit a parolee to bail. The Second Circuit concluded that "the district judge did have the power to grant bail" in a parole revocation proceeding. *Id.* at 1377. Similarly, in *Galante v. Warden-MCC*, the Second Circuit cited *Argro*, noting: "Bail pending a parole revocation hearing is

therefore granted only in 'most unusual circumstances,' *Argro v. United States*, *supra* at 1378, or when 'extraordinary or exceptional circumstances . . . make the grant of bail necessary to make the habeas remedy effective." *Galante*, 573 F.2d at 708 (citation omitted). The use of the disjunctive "or" supports the district court's authority to grant bail in cases that do not involve a *habeas* petition.

Courts in this circuit have granted bail to parolees pending a final revocation hearing or, at a minimum, acknowledged that the district court has the authority to grant bail in such circumstances. In *United States v. Schrieber*, 367 F. Supp. 791, 792 (E.D.N.Y. 1973), Judge Dooling in the Eastern District of New York granted bail to the retaken parolee, after expressly finding that the district court was "neither expressly authorized nor forbidden" to admit a parolee to bail by the relevant statutes. In approving bail, Judge Dooling considered: (1) the fact that ultimate "state incarceration or federal recommitment [were] not inevitable"; (2) the "family circumstances of defendant," including the family's offer to "furnish further assistance of his continuing availability"; (3) the fact that the Parole Commission would likely wait to conduct its hearing until after the state court entered judgment on defendant's guilty plea; and (4) lack of flight risk. *Id.*

Similarly, in *Robin v. Thomas*, Judge Weinfeld of the Southern District of New York evaluated defendant's bail application separately from defendant's motion to vacate the sentence, pursuant to 28 U.S.C. § 2255. *Robin v. Thomas*, 555 F. Supp. 849 (S.D.N.Y. 1983). In that case, the court considered the *habeas* petition and the bail application as two separate applications, even though they appear to have been addressed in the same proceeding. *Id.*

Additionally, this court noted the multitude of unusual circumstances present here that weighed in favor of granting defendant's bail application, pending the final revocation hearing. Mr. Valesquez had been sentenced to eight years of imprisonment, followed by a 20-year term of special parole. His current term of parole is scheduled to terminate in April 2022 – 37 years after his offense conduct. (ECF No. 6, Gov. Mot. Opp. 5.) Senior US Probation Officer Michelle Powell submitted a request for an assume custody warrant to the Parole Commission on December 12, 2018, based on defendant's four positive urinalyses, for fentanyl and morphine, between July 18, 2018 and October 17, 2018, and also for defendant's failure to perform 100 hours of community service as directed. (*Id.*)

Between December 12, 2018, when the assume custody warrant was sent to the Parole Commission, and December 3, 2019, nearly one year later, when the warrant was executed, Mr.

Valesquez reported as directed to Officer Powell and had not tested positive on urinalyses since October 17, 2018. (*Id.* at 6.) Almost one full year after the warrant application, on December 3, 2019, Mr. Valesquez was arrested on a warrant by the US Marshal Service and lodged at MCC-New York. (*Id.*) On December 3, 2019, the U.S. Marshal filed a Return on the Parole Commission, notifying Parole that Mr. Valesquez had been arrested and was being held at MCC-New York. Nevertheless, the Parole Commission has stated that it "was not informed of the defendant's arrest until January 23, 2020," but noted that the employee responsible for the warrant had ceased employment with the Parole Commission. (ECF No. 12, Gov. Letter re: information from Parole 1.) The court found credible the representation of the United States Marshal in the Eastern District of New York that the deputy Marshals routinely return warrants as directed to the Parole Commission, as stated in the Marshal's return. (ECF No. 6, Ex. A, United States Marshal's Return to United States Parole Commission.)

Nevertheless, Mr. Valesquez did not receive a preliminary interview, pursuant to 18 U.S.C. § 4214(a) or 28 C.F.R. 2.48, until February 3, 2020, following the court's order grant the writ of *mandamus*. Indeed, the court understands that numerous efforts were undertaken, by Mr. Valesquez, his family members, his counsel, the Probation Department, and the U.S.

Attorney's office to spur the Parole Commission to action, to no apparent avail or response, as of the hearing on February 3, 2020.

On February 3, 2020, as discussed above, the court ordered the Parole Commission to transmit the necessary paperwork, forthwith, to the Probation Department, in order to allow the preliminary interview to occur that same day. The preliminary interview did, in fact, occur on February 3, 2020, with assistance of counsel present. According to defense counsel's letter dated February 3, 2020 in support of defendant's bail application, pending defendant's final revocation hearing, the Probation Department informed Mr. Valesquez that it will recommend to the Parole Commission a finding of probable cause on both charges. However, the Probation Department also advised that it would recommend to the Parole Commission that defendant be released pending any future parole proceedings, notwithstanding the recommendation of probable cause, and also recommend a sentence of time served if the charges are sustained. (ECF No. 10, Motion for Bond 1.) At the hearing, the Probation Department clarified that, although it could not make a formal recommendation to the Parole Commission of a "time served" sentence, it would not object to such a recommendation by defense counsel.

As defense counsel has aptly pointed out, "[E]very day [defendant] awaits the Parole Commission's 21-day decision is a day he is likely over-serving his sentence." (*Id.* at 2.) Further, 28 C.F.R. § 2.48(e) provides:

> If the Commission finds probable cause to believe that the parolee has violated the conditions of his release, reinstatement to supervision or release pending further proceeding may nonetheless be ordered if it is determined that:
>
> (1) Continuation of revocation proceedings is not warranted despite the violations found; or
> (2) Incarceration pending further revocation proceedings is not warranted by the alleged frequency or seriousness of such violation or violations, and that the parolee is not likely to fail to appear for further proceedings, and that the parolee does not constitute a danger to himself or others.

Although 28 C.F.R. § 2.48(e) provides the standard for reinstatement to supervision pending further parole revocation proceedings, the court considered the totality of these circumstances in deciding whether to grant bail pending defendant's final revocation hearing.

As noted in Exhibit B to defendant's Motion for Bond, filed on the evening of February 3, 2020, (1) Mr. Valesquez has "reported as directed to Senior US Probation Officer Michelle Powell," including after he was informed that a warrant had been requested for his arrest; (2) Mr. Valesquez has not had positive urinalyses since October 2018; (3) his recent history of

sobriety indicates he is not a danger to himself, and there is no evidence to suggest he is a danger to others. Moreover, Mr. Valesquez had presented evidence that he had successfully completed a drug treatment program on December 2, 2019, the day before his arrest, and had maintained full-time employment since his mother, who suffered from dementia had passed away. (*See generally* ECF No. 10, Exs.) Finally, defendant is willing to resume his community service obligation now that he is no longer caring for his ailing mother. Thus, the court found, based on the nature of the technical violations, negative urinalyses results since late 2018, defendant's completion of drug treatment, defendant's reporting as directed to his probation officer, his ongoing sobriety, and his full-time employment, that continued incarceration pending further revocation proceedings is not warranted. In addition, defendant is not a flight risk, given his full-time employment, history of reporting to his probation officer, and his stable residence. (ECF No. 10, Ex. C, MetroExpress Letter; ECF No. 10, Ex. E, MetroExpress 2019 W-2; *United States v. Schrieber*, 367 F. Supp. 791, 792 (E.D.N.Y. 1973).)

Thus, having considered all of the foregoing facts that make this an "unusual" case, with extraordinary circumstances, the court found that bail is warranted pending

the final revocation hearing, and **granted** defendant's Motion for Bond.

**CONCLUSION**

For the foregoing reasons, on February 3, 2020, following oral argument, the court respectfully **denied** the government's motion for reconsideration of the court's January 29, 2020 order; **denied** defendant's *habeas* petition pursuant to 28 U.S.C. § 2241; and **granted** *mandamus* relief pursuant to 28 U.S.C. § 1361 against the Parole Commission.  On February 4, 2020, following a hearing, the court **granted** defendant's Motion for Bond, pending defendant's final revocation hearing.  The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Dated: February 4, 2020
        Brooklyn, New York

                                    /s/
                        _____
                        **KIYO A. MATSUMOTO**
                        United States District Judge
                        Eastern District of New York